**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NINA S. JACKSON,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 4:13-CV-169<br><br>MAGISTRATE JUDGE VECCHIARELLI<br><br>**MEMORANDUM OPINION AND ORDER** |

Plaintiff, Nina S. Jackson ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"),[1] denying her application for Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423. This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

## I. PROCEDURAL HISTORY

On November 24, 2009, Plaintiff filed her applications for POD and DIB, alleging a disability onset of March 24, 2009. (Transcript ("Tr.") 11.) The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (*Id.*) On October 26, 2011, an ALJ held Plaintiff's

---

1 On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. She is automatically substituted as the defendant in this case pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

hearing. (*Id*.) Plaintiff participated in the hearing, was represented by counsel, and testified. (*Id*.) A vocational expert ("VE") also participated and testified. (*Id*.) On November 4, 2011, the ALJ found Plaintiff not disabled. (Tr. 11-19.) On December 28, 2012, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1.)

On January 23, 2013, Plaintiff filed her complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 12, 13, 14, 16, 17, 18.) Plaintiff argues that substantial evidence does not support the ALJ's decision, and that the ALJ improperly used boilerplate language in his decision.

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was born on December 17, 1972. (Tr. 29.) She completed high school and could communicate in English. (Tr. 30.) She had past relevant work as a light bulb inspector, a lay away worker at Wal Mart, and a customer service representative. (Tr. 30-31.)

### B. Relevant Medical Evidence

#### 1. Treatment Notes

In response to a January 2010 request from the state agency, the Belmont Eye Clinic indicated that Plaintiff had received treatment there from March 1983 through September 2002, and had been diagnosed with glaucoma and iritis of the right eye, and exotropia – a condition in which both eyes turn outward. (Tr. 188.) The record also

noted that Plaintiff had been diagnosed with pseudophakia – the implantation of an artificial lens. (*Id*.) She had undergone muscle surgery in July 1983. (*Id*.)

In January 1998, Fernando Zegarra, M.D., noted that Plaintiff had a history of poor vision in her right eye "due to penetrating injury many years ago." (Tr. 192.) Dr. Zegarra noted Plaintiff's more recent complaints of decreased vision in her left eye. (*Id*.) Dr. Zegarra's exam revealed that Plaintiff's visual acuity in her right eye was "at hand motions only." (Tr. 194.) He could find no medical reason for Plaintiff's complaints regarding the vision in her left eye. (Tr. 194-95.)

In January 2010, an ophthalmologist at Eye Care Associates reported that, in October 2009, Plaintiff had been diagnosed with primary angle closure glaucoma, which had been treated with a tube shunt. (Tr. 219, 221.) The ophthalmologist reported that Plaintiff was blind in her right eye, and had poor depth perception and no binocular vision. (Tr. 221.)

In September 2011, John Aey, M.D., diagnosed Plaintiff with a corneal ulcer in her right eye. (Tr. 387.) He prescribed Vigamox and Cosopt. (Tr. 386.)

**2. Agency Reports**

On May 14, 2010, state agency consulting physician Bart Brine, M.D., examined Plaintiff. (Tr. 282-84.) He noted extropia and corneal scarring in Plaintiff's right eye. (Tr. 282.) He diagnosed her with retinal scars and glaucoma in her right eye, and ocular hypertension in her left eye. (Tr. 283.) Dr. Brine opined that Plaintiff had an "obvious impaired visual field [but] should be able to perform sedentary work." (*Id*.)

On May 24, 2010, state agency consulting physician Paul Morton, M.D.,

performed a physical residual functional capacity ("RFC") assessment. (Tr. 285-92.) He opined that Plaintiff was limited to: lifting and carrying 50 pounds occasionally and 25 pounds frequently; sitting, walking or standing for six hours in an eight-hour day; never climbing ladders, ramps or scaffolds; frequently stooping; and occasionally crawling. (Tr. 292.) He limited Plaintiff to "no tasks requiring full binocular vision or depth perception," and prohibited her from commercial driving and working near or with hazardous machinery or unprotected heights. (*Id.*)

**C. Hearing Testimony**

**1. Plaintiff's Hearing Testimony**

At her October 26, 2011 hearing, Plaintiff testified as follows:

Her vision conditions made it difficult for her to focus for lengthy periods of time. (Tr. 33-34.) She had to strain to see. (Tr. 34-35.) Bright lights bothered her and made it difficult for her to see. (Tr. 35.) Plaintiff had not been able to see out of her right eye since she was four or five years old. (Tr. 38.)

During her work as a customer service representative, Plaintiff needed to take breaks in between phone calls in order to allow her eyes to refocus on her computer screen. (Tr. 41.) She needed a break after two or three calls to rest her eyes. (*Id.*) Plaintiff believed that, for every hour she worked answering customer calls, she required ten to 15 minutes to rest her eyes. (Tr. 42.)

**2. Vocational Expert's Hearing Testimony**

The ALJ described the following hypothetical individual to the VE:

> [A]ssume a younger person with a high school education and [Plaintiff's] work history, can perform light work, but

> cannot climb ladders, ropes or scaffolds and can only occasionally climb ramps and stairs. Assume this person cannot perform any job requiring extensive amounts of reading or looking at a computer screen. Assume this person cannot perform any job requiring wide visual fields or depth perception. Assume this person must avoid all exposure to hazards, such as dangerous machinery or unprotected heights. Assume this person cannot tolerate very bright light . . . .
>
> * * *
>
> [A]ssume this person cannot focus[,] and by focus I'm talking about the visual focus rather than the mental focus . . . for long periods of time exceeding two hours.

(Tr. 47.) The VE testified that the hypothetical individual would not be able to perform any of Plaintiff's past relevant work. (Tr. 47-48.) However, the VE opined that the hypothetical individual could perform work as a laundry worker, cafeteria attendant or office cleaner. (Tr. 48.)

The ALJ asked the VE whether, if the hypothetical individual previously described was also required to take multiple breaks that would consume 15 or 20 percent of the workday, that individual would be capable of performing any work. (Tr. 48.) The VE testified that such an individual would not be able to maintain any job. (*Id.*)

## III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV. SUMMARY OF COMMISSIONER'S DECISION

In his June 7, 2011 decision, the ALJ made the following findings of fact and conclusions of law:

1. Plaintiff meets the insured status requirements of the Act through December 31, 2014.

2. Plaintiff did not engage in substantial gainful activity since March 24,2009, the alleged onset date.

3. Plaintiff has the following severe impairments: pseudophakia of the right eye, primary open angle glaucoma bilaterally, retinal scars, diabetes and obesity.

4. Plaintiff does not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except that Plaintiff cannot climb ladders, ropes or scaffolds and can only occasionally climb ramps and stairs. In addition, Plaintiff cannot perform any job requiring wide visual fields, depth perception, extensive reading or using computer screens. Plaintiff must avoid all exposure to hazards such as dangerous machinery or unprotected heights. Plaintiff cannot tolerate very bright light situations. Plaintiff's ability to maintain focus with her eyes is limited to two hours at a time.

6. Plaintiff is unable to perform any past relevant work.

7. Plaintiff was born on December 17, 1972, and was 36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. Plaintiff has at least a high school education and is able to communicate in English.

* * *

10. Considering Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

10. Plaintiff has not been under a disability, as defined in the Act, from March 24, 2009 through the November 4, 2011, the date of the ALJ's decision.

(Tr. 13-19.)

## V. LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. Plaintiff's Assignments of Error

Plaintiff's briefing in this case contains virtually no legal argument. That

8

argument that it does contain is inadequate. Plaintiff devotes the bulk of her briefing to transcribing testimony and argument from the administrative hearing, and supporting her request for remand on the basis of amendments to the Listing of Impairments ("Listings"), which she later withdrew.[2] Although Plaintiff lists the issues she asserted before the Appeals Council, she fails to support many of them with any further argument.[3] Rather, the "Argument" portions of her various briefs address – with

---

[2] Throughout her briefing in this matter, Plaintiff requested that the Court remand her case to allow the Commissioner to apply amended visual disorder listings recently added to the Listings. (*See, e.g.,* Doc. No. 17.) In her Brief, the Commissioner opposed the request for remand, arguing, *inter alias*, that the amendments to the Listings did not apply to Plaintiff's case because her case was pending on judicial review on the effective date of the amendments. (Commissioner's Brief ("Comm. Br.") 12-14, Doc. No. 18.) On June 20, 2103, Plaintiff filed a Notice of Partial Withdrawal, in which she withdrew her request that this Court remand her case on the basis of the amendments to the Listings. (Doc. No. 19.)

[3] In her original brief in this case, Plaintiff requested leave to file a supplemental brief to address the amendments to the Listings. (Plaintiff's Brief ("Pl. Br.") at 1, n.1, Doc. No. 12.) The Argument portion of Plaintiff's Brief read as follows:

> It is undisputed that the Plaintiff-Claimant has severe vision problems from blindness, tearing, swelling, deterioration of the lens implant and ocular pain.
>
> It is further undisputed that the Vocational Examiner (V.E.) gave the answers, *supra*, at R. 45-48 and it is clear that she testified the claimant could not work, given the hypothetical factors in the ALJ's and counsel's questions.

(Pl. Br. at 7. ) This Court granted Plaintiff leave to file a supplemental brief. (Doc. No. 13.) Thereafter, Plaintiff filed a Supplemental Brief and Motion for Remand (Doc. No. 14), which this Court later struck from the docket, noting that the Supplemental Brief contained "virtually no legal argument" and requested relief – remand – that was more appropriately raised in her Brief on the Merits. (Doc. No. 16.)

alarming brevity – only the following issues: (1) whether substantial evidence supports the ALJ's conclusion that Plaintiff is capable of performing work in light of the ALJ's hypothetical to the VE; and (2) whether the ALJ erred in using boilerplate language in his decision. Accordingly, this Court considers each of Plaintiff's other arguments to be perfunctory and conclusory, and, thus, waived. *See Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir.2006) ("It is well-established that 'issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'") (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–996 (6th Cir.1997)).

**1. Hypothetical Questions to the VE**

Plaintiff argues that substantial evidence does not support the ALJ's determination of her RFC because the ALJ failed to explain why he did not include in the RFC the restriction that Plaintiff was required to take breaks from work that would consume between fifteen and twenty percent of her workday. According to Plaintiff, because the ALJ inquired about this limitation during the administrative hearing in this

---

Subsequently, Plaintiff filed an Amended Supplemental Brief on the Merits, in which she added the following to the Argument section:

> The ALJ used boilerplate language, which he cannot do. [Quotes a portion of the ALJ's decision.]
>
> Boilerplate template has been prohibited by a recent decision out of the Seventh Circuit Court of Appeals in Bjornson v. Astrue, No. 11-2422, ___ F.3d ___ (7th Cir. Jan. 31, 2012). Attached as Exhibit "C" is the discussion of Bjornson [*sic*] contained in the March 12, 2012 issue of N.O.S.S.C.R. Social Security Forum, pp. 7, 25, and 30.

(Plaintiff's Amended Supplemental Brief ("Pl. Am. Supp. Br.") at 8.)

case, he was required either to adopt the limitation or to explain why he had not done so.

This argument lacks merit. It is true, of course, that an ALJ is required to explain his assessment of certain types of information – such as the opinion of a claimant's treating physician. *See, e.g.,* 20 C.F.R. § 404.1527(c)(2). However, Plaintiff points to no legal authority – and this Court is unaware of any – requiring an ALJ to explain his decision to reject limitations he set forth in hypotheticals to the VE during the administrative hearing in a particular case. Absent such authority, there is no basis for concluding that the ALJ erred in calculating Plaintiff's RFC, or that substantial evidence does not support it.

**2. Boilerplate Language**

Plaintiff argues that the ALJ erred in using boilerplate language in his decision. Specifically, Plaintiff points to the following excerpt from the ALJ's discussion of step five in the sequential analysis:

> If the claimant had the residual functional capacity to perform the full range of light work, finding of "not disabled" would be directed by Medical-Vocational Rule 202.21. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations.

(Tr. 18.) Plaintiff relies on the Seventh Circuit's decision in *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012), to argue that the ALJ was prohibited from using boilerplate language in his decision.

Plaintiff's argument is not well taken. The decision in *Bjornson*, in addition to not being binding on this Court, addressed an entirely different set of boilerplate language.

In that case, the Seventh Circuit criticized the ALJ's use of template language to conclude that the claimant's statements regarding the limiting effects of her symptoms were not credible to the extent they were inconsistent with the RFC in that case:

> One problem with the boilerplate is that the assessment of the claimant's [RFC] . . . comes later in the administrative law judge's opinion . . . . A deeper problem is that the assessment of a claimant's ability to work will often (and in the present case) depend heavily on the credibility of her statements concerning the "intensity, persistence and limiting effects" of her symptoms, but the passage implies that the ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards.

671 F.3d at 645.

In this case, the language challenged by Plaintiff does not suffer from the same infirmities as the language at issue in *Bjornson*. Rather, the language at issue here is a correct statement of the application of the Medical-Vocational Rules ("Grids"). Rule 202.21 of the Grids directs that an individual capable of performing light work who is a high school graduate is not disabled. *See* 20 C.F.R. Part 404, Subpt. B, App. 2, Rule 202.21. Plaintiff does not explain how the ALJ's use of this language – to the extent that it is boilerplate – prejudiced her, particularly in light of the fact that the ALJ concluded that Plaintiff was *not* capable of performing the full range of light work and, thus, that the Grids did not determine the result in her case. Accordingly, the ALJ did not err by including this language in his decision, and Plaintiff's argument presents no basis for remand in this case.

## VI. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: July 9, 2013